**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

| | |
|---|---|
| DZURKA BROS., LLC, et al., | |
| Plaintiffs, | Case No. 1:23-cv-11038-TLL-PTM |
| v. | Hon. Thomas L. Ludington |
| LUCKEY FARMERS, INC., et al., | Magistrate Judge Patricia T. Morris |
| Defendants. | |

### DEFENDANT LUCKEY FARMERS INC.'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Luckey Farmers, Inc., an Ohio Cooperative Association ("Luckey") through its attorneys at Barrett, Easterday, Cunningham & Eselgroth, LLP, respectfully moves to dismiss all of the claims filed by Dzurka Bros. LLC, ("Dzurka"); Joseph and Veronica Eickholt ("Eickholt"); Fergus Farms, LLC ("Fergus"); R&L Farm and Freight, LLC ("R&L"); Christopher Histed D/B/A K&H Farms ("K&H"); Maple Row Farms, LLC ("Maple Row"); Timothy Vergote ("Vergote"); and Douglas and Linda Wilkin D/B/A D&L Wilkin Farms ("Wilkin") (collectively, "Plaintiffs") for failure to state a claim upon which relief can be granted, and for other and further relief as the Court deems just and proper. In support of its Motion, Luckey submits a Memorandum of Law which is attached and incorporated.

Respectfully submitted,

*/s/ G. Eli Earich*
Troy A. Callicoat (0076279)
E-Mail: tcallicoat@farmlawyers.com
G. Eli Earich (0100970)
E-Mail: gearich@farmlawyers.com
**BARRETT, EASTERDAY, CUNNINGHAM & ESELGROTH LLP**
7259 Sawmill Road, Dublin, Ohio 43016
Telephone: 614-210-1840 | Fax: 614-210-1841
*Attorneys for Defendant Luckey Farmers, Inc.*

1

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.    FACTS RELATING TO THE UNDERLYING CONTRACTS .................................. 2

III.    LEGAL ARGUMENT ....................................................................................... 4

    A.    **Plaintiffs failed to state actionable claims against Luckey in Counts I, II, and III because the Contracts are cash forward contracts that are excluded from regulation under the Commodity Exchange Act. ........................................................................... 5**

        1.    **The Contracts are cash forward contracts because there is a legitimate expectation that physical delivery of the actual commodity by Plaintiffs would occur in the future. ........................................................................................................... 6**

        2.    **Plaintiffs' assertion that the Contracts are futures contracts because they could theoretically be "rolled to infinity" is unpersuasive. ........................................... 7**

        3.    **The Contracts are analogous to "Hedge-To-Arrive" contracts and "Premium Offer" contracts which have already been recognized by the Sixth Circuit and the CFTC as cash forward contracts. ............................................................................... 8**

        4.    **The Contracts should be enforced as a matter of public policy because they promote market innovation and provide a tool for effective risk management. .......... 10**

    B.    **Plaintiffs failed to state an actionable claim against Luckey in Count II because Plaintiffs failed to allege facts that show it is plausible that the Contracts are "fictitious sales" under the CEA. ............................................................................................... 11**

    C.    **Plaintiffs failed to state actionable claims against Luckey in Counts I, III, and VII because Plaintiffs did not satisfy the pleading standard in Fed. R. Civ. P. 9(b). .............. 12**

    D.    **Plaintiffs failed to state an actionable claim against Luckey in Count IV, recission under the Uniform Commercial Code, because the breaching party to a contract cannot successfully argue for recission of a contract. ...................................................... 14**

    E.    **Plaintiffs failed to state an actionable claim against Luckey in Count V, unjust enrichment, because the parties were engaged in express, enforceable contracts which governed the parties' relationship. ........................................................................ 15**

    F.    **Plaintiffs failed to state an actionable claim against Luckey in Count VI, negligence, because Luckey did not owe a duty to Plaintiffs separate and apart from its contractual obligation. ....................................................................................................... 16**

    G.    **Plaintiffs failed to state an actionable claim against Luckey in Count VIII, breach of contract, because the assignment from IDA to Luckey is not a breach of contract. ..... 17**

IV.    CONCLUSION ............................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Abioloa v. Select Portfolio Servicing, Inc.*, No. 2:17-CV-13741, 2021 WL 7208836 (E.D. Mich. Dec. 15, 2021), *report and recommendation adopted,* No. 217CV13741TGBKGA, 2022 WL 17752120 (E.D. Mich. Dec. 19, 2022) ................................................................................. 13, 14

*Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308 (6th Cir. 1998) ................ 4, 5, 6, 7, 8, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................. 4

*Bakerman v. Sidney Frank Importing Co., Inc.*, 2006 WL 3927242 (Del.Ch. Oct. 10, 2006.) 14

*Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007). ..................................................................... 4, 12

*Bender v. Southland Corp.*, 749 F.2d 1205 (6th Cir. 1984)................................................. 12, 13

*Brightman v. Freeway Assoc.*, No. 90-4072, 1991 WL 151057 (6th Cir. Aug. 8, 1991).... 12, 13

*Ceckiewicz v. Comcast Corp.*, No. 08-12038, 2008 WL 5382459 (E.D. Mich. Dec. 23, 2008). 15

*CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766 (9th Cir.1995) ..................................................... 8

*Edwards v. Concord Dev. Corp.*, No. 174487, 1996 WL 33358104 (Mich.Ct.App. Sept. 17, 1996) ............................................................................................................................................. 17

*Heaton v. Bank of America Corp.*, 2011 WL 3112325 (E.D. Mich. 2011) ............................... 15

*Hughes v. State Farm Mutual Automobile Insurance Company*, No. 07-13542, 2008 WL 11355564 (E.D. Mich. Apr. 29, 2008)................................................................................... 16, 17

*In re Grain Land Cooperative*, 978 F.Supp. 1267 (D.Minn.1997) .............................................. 6

*In the Matter of Cargill, Inc., Respondent.*, 2000 WL 1728291. ...................................... 9, 10, 12

*ISRA Vision, AG v. Burton Industries, Inc.*, 654 F.Supp.2d 638 (E.D. Mich. 2009).............. 17

*Jaffe v. Travelers Companies, Inc.*, No. 1:22-CV-13157, 2023 WL 3262950 (E.D. Mich. Apr. 5, 2023) ....................................................................................................................................... 15

*Kammer Asphalt Paving v. East China Township Schools*, 443 Mich. 176, 504 N.W.2d 635 (1993)........................................................................................................................................... 15

*Moss v. Mercy St. Anne Hosp.*, No. 3:12CV1840, 2013 WL 4885966 (N.D. Ohio Sept. 11, 2013) ............................................................................................................................................... 4

*Omnicron of Mich. v. Giannetti Inv. Co.*, 561 N.W.2d 138 (Mich. App. 1997) ...................... 14

*Radakovich v. Energy Recovery, Inc.*, No. 11-13443, 2012 WL 4513636 (E.D. Mich. Sept. 30, 2012) ........................................................................................................................... 14, 15

*Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239 (6th Cir.2012) ....... 4, 12

*Sparkle Builders I, Ltd. v. Williams*, No. 307522, 2012 WL 6097479 (Mich.Ct.App. Dec. 6, 2012) ........................................................................................................................... 17, 18

*Spengler v. ADT Security Services, Inc.*, 505 F.3d 456 (6th Cir. 2007) .................................... 16

*United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 352 F.3d 496 (6th Cir. 2008) ................. 13

<u>Statutes</u>

7 U.S.C.A. § 1 .............................................................................................................................. 4
7 U.S.C.A. § 2 .............................................................................................................................. 4
7 U.S.C.A. § 6c ...................................................................................................................... 11, 12

<u>Other Authorities</u>

*Black's Law Dictionary* (10th ed. 2014) ..................................................................................... 11

<u>Rules</u>

Fed. R. Civ. P. 12 ......................................................................................................................... 4
Fed. R. Civ. P. 9 ......................................................................................................................... 12

**MEMORANDUM OF LAW**

## I.   PRELIMINARY STATEMENT

Plaintiffs' Complaint should be dismissed with prejudice under Fed. R. 12(b)(6) for the following reasons:

(A) Plaintiffs failed to state actionable claims against Luckey in Counts I, II, and III because the Contracts are cash forward contracts that are excluded from regulation under the Commodity Exchange Act;

(B) Plaintiffs failed to state an actionable claim against Luckey in Count II because Plaintiffs failed to allege facts that show it is plausible that the Contracts are "fictitious sales" under the Commodity Exchange Act;

(C) Plaintiffs failed to state actionable claims against Luckey in Counts I, III, and VII because Plaintiffs did not satisfy the pleading standard in Fed. R. Civ. P. 9(b);

(D) Plaintiffs failed to state an actionable claim against Luckey in Count IV because the breaching party to a contract cannot successfully argue for recission of a contract;

(E) Plaintiffs failed to state an actionable claim against Luckey in Count V because the parties were engaged in express, enforceable contracts which governed the parties' relationship;

(F) Plaintiffs failed to state an actionable claim against Luckey in Count VI because Luckey did not owe a duty to Plaintiffs separate and apart from its contractual obligation; and

(G) Plaintiffs failed to state an actionable claim against Luckey in Count VIII because the assignment from IDA to Luckey is not a breach of contract.

## II.    <u>FACTS RELATING TO THE UNDERLYING CONTRACTS</u>

Luckey is an Ohio cooperative association that owns and operates grain elevators. (ECF No. 1, p.8 at ¶41; p. 9 at ¶43.) Luckey purchases grain from farmers and later sells it to end users. (ECF No. 1, p.9 at ¶43.) Similarly, Defendant IDA Farmers Cooperative ("IDA") is a cooperative association located in Michigan that purchases grain from farmers. (ECF No. 1, p.8 at ¶40; p. 9 at ¶43.)  Plaintiffs raise and sell grain to companies like Luckey and IDA. (ECF No. 1, p. 9 at ¶44.)

At various times, Plaintiffs sold corn and soybeans to IDA. (ECF No. 1, p. 17 at ¶68.) IDA memorialized the transactions with Plaintiffs by issuing a contract confirmation. (ECF No. 1-1.)[1] IDA's contract confirmations set forth delivery periods which specified when the corn or soybeans were to be delivered by Plaintiffs. (ECF No. 1-1.)[2] After receiving the contract confirmations, Plaintiffs would sign and return them to IDA. (ECF No. 1-1.).[3] Plaintiffs also signed and returned an "Agrivisor Addendum" for the contract confirmations which utilized an "Accumulator" contract pricing mechanism that could cause the original quantity of bushels to be delivered to double if certain futures reference price levels were reached. (ECF No. 1-2.)[4] Plaintiffs' contracts were later assigned to Luckey because the grain merchandiser Plaintiffs had been working with at IDA, Alan Peters ("Peters") was now employed by Luckey. (ECF No. 1-3.)[5] After the assignments,

---

[1] Exhibit A is representative of IDA's contract confirmations and shows IDA Contract #11070, IDA's contract confirmation for Dzurka's initial sale of 20,000.00 bushels of corn to IDA.
[2] Exhibit A is representative of IDA's contract confirmations and shows that IDA Contract #11070 set forth a specific delivery period of September 15, 2022 – November 30, 2022.
[3] Exhibit A is representative of IDA's contract confirmations and shows that IDA Contract #11070 was executed by a representative of Dzurka.
[4] Exhibit B is representative of the Agrivisor Addendums and shows Dzurka's Agrivisor Addendum that could cause the original quantity of bushels to be delivered on IDA Contract #11070 to double from 20,000.00 to 40,000.00 if certain futures reference prices were reached.
[5] Exhibit C is representative of the letter sent by IDA to the Plaintiffs and shows that IDA assigned five (5) of R&L's contracts to Luckey.

the IDA contracts were designated contract confirmation numbers with Luckey. (ECF No. 1-5, p.1.)[6]

Collectively, Plaintiffs' contracts at issue in this case are referred to as the "Contracts." As Plaintiffs explain in their Complaint, the Contracts are "Accumulator" contracts because of the potential for the deliverable bushels to double. (ECF No. 1, p.10–12 at ¶¶48–53.) In accordance with the Contracts, certain futures reference price levels and market conditions caused each Plaintiff's deliverable bushel obligation (including corn and soybeans) to double. (ECF No. 1-5, p.1.)[7] Importantly, the Contracts specified that they would be governed by the laws of Michigan. (ECF No. 1-1.)[8] The contractual documents attached to Plaintiffs' Complaint are a representative sample of all the contracts at issue in this case.

At various times, Luckey and Plaintiffs agreed to amend the futures reference month and delivery date for the Contracts by "rolling" the Contracts forward to a new futures reference month with a new delivery period. (ECF No. 1-5.)[9] Unfortunately, Plaintiffs failed to fully deliver on the Contracts. Accordingly, Luckey cancelled the Contracts and invoiced Plaintiffs for its damages.

Prior to Plaintiffs filing the present action, Luckey filed its own state court cases against Dzurka, Fergus, R&L, K&H, Maple Row, and Vergote in Sandusky County, Ohio to recover its losses associated with the cancellation of Plaintiffs' contracts. The Complaints were removed by

---

[6] Exhibit E-1 is representative of Luckey's contract confirmations and shows that Luckey Contract #49249.
[7] For example, Exhibit E-1 shows that certain market conditions caused Fergus' deliverable bushel obligation to double from 3,000.00 to 6,000.00.
[8] Exhibit A is representative of IDA's contract confirmations and shows that the 9th paragraph of IDA's contract confirmation states "[t]his Contract shall be governed by the laws of the state of Michigan."
[9] Exhibit E-1 is representative of Luckey's contract confirmations and contains comments which show Luckey Contract #49249 had been rolled forward several times and had a final delivery period of December 31, 2022.

Dzurka,[10] Fergus,[11] R&L,[12] K&H,[13] Maple Row,[14] and Vergote[15] to the U.S. District Court, Northern District of Ohio (the "Toledo Cases"). Plaintiffs also filed counterclaims in the Toledo Cases that mirror their claims in this case. In other words, Plaintiffs Complaint is causing the parties to litigate the exact same claims in two separate federal jurisdictions.

## III.   **LEGAL ARGUMENT**

Under Federal Rule of Civil Procedure 12(b)(6), a Complaint must be dismissed where, as here, it fails to state a plausible claim for relief. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (Emphasis added.) *Id*.

When deciding a motion to dismiss, the Court need not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *Moss v. Mercy St. Anne Hosp*., No. 3:12CV1840, 2013 WL 4885966, at *1 (N.D. Ohio Sept. 11, 2013) (citing *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246 (6th Cir.2012)). A plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555, (2007).

---

[10] *Luckey Farmers Inc. v. Dzurka Bros, LLC, et al.,* Case No. 3:23-CV-01203-JJH, N.D. Ohio.
[11] *Luckey Farmers Inc. v. Fergus Farms, LLC, et al.,* Case No. 3:23-CV-01207-JGC, N.D. Ohio.
[12] *Luckey Farmers Inc. v. R&L Farm and Freight, LLC, et al.,* Case No. 3:23-CV-01088, N.D. Ohio.
[13] *Luckey Farmers Inc. v. Christopher Histed and Histed Farms, et al.,* Case No. 3:23-CV-00926, N.D. Ohio.
[14] *Luckey Farmers Inc. v. Maple Row Farms, LLC, et al.,* Case No. 3:23-CV-00927, N.D. Ohio.
[15] *Luckey Farmers Inc. v. Tim Vergote, et al.,* Case No. 3:23-CV-01091, N.D. Ohio.

A. **Plaintiffs failed to state actionable claims against Luckey in Counts I, II, and III because the Contracts are cash forward contracts that are excluded from regulation under the Commodity Exchange Act.**

It is well-settled in the Sixth Circuit that "cash forward contracts" are excluded from regulation under the Commodity Exchange Act (CEA) and are not subject to regulation by the Commodity Futures Trading Commission (CFTC). *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 318 (6th Cir. 1998). Conversely, "futures contracts" *are* governed by the CEA and are subject to regulation by the CFTC. *See* 7 U.S.C.A. § 2. Futures contracts are "contracts of sale of a commodity for future delivery." *Id*. The term "future delivery" does not include "any sale of any cash commodity for deferred shipment or delivery." 7 U.S.C.A. § 1(27). Such contracts are referred to as "cash forward contracts." Thus, the question before the Court is whether an "Accumulator" contract is a cash forward contract that is excluded from the CEA and therefore not subject to regulation by the CFTC.

The Contracts are cash forward contracts for four reasons: (1) there is a legitimate expectation that physical delivery of the corn and soybeans by Plaintiffs would occur in the future, (2) Plaintiffs' assertion that the Contracts are futures contracts because the Contracts could theoretically be "rolled to infinity" is unpersuasive, (3) the Contracts are analogous to "Hedge-To-Arrive" contracts and "Premium Offer" contracts, which have already been recognized by the Sixth Circuit and the CFTC as cash forward contracts, and (4) the Contracts should be enforced as a matter of public policy because they promote market innovation and provide a tool for effective risk management.

1. **The Contracts are cash forward contracts because there is a legitimate expectation that physical delivery of the actual commodity by Plaintiffs would occur in the future.**

"[I]n determining whether a particular commodities contract falls within the [self-executing] cash forward exception, courts must focus on whether there is a legitimate expectation that physical delivery of the actual commodity by the seller to the original contracting buyer will occur in the future." *Andersons*, 166 F.3d at *318.

In *Andersons*, the Sixth Circuit analyzed seven factors to determine whether a contract fit within the cash forward contract exclusion because physical delivery was expected: (1) the grain elevator entered into the contract only with farmers and producers of grain and not with speculators from the general public; (2) each plaintiff was a farmer in the business of growing grain and had the ability to make delivery on the contracts; (3) the grain elevator was in the business of obtaining grain under contracts for resale and relied on actual delivery of that grain to carry out its business; (4) the grain elevator had the capacity to take delivery of the grain subject to the contract; (5) on their faces, the contracts were clearly grain marketing instruments and tools to accomplish the actual delivery of grain in exchange for money; (6) it was undisputed that delivery and payment routinely occurred between the parties in past dealings; and (7) the plaintiffs received cash payment on the contracts only upon delivery of the actual commodity. *Andersons*, 166 F.3d at *320 (citing *In re Grain Land Cooperative*, 978 F.Supp. 1267 at *1273 – 1274 (D.Minn.1997)).

Here, the Contracts exhibit all seven of the characteristics identified by the Sixth Circuit. First, there is no evidence Luckey entered the Contracts with anyone other than farmers and/or grain producers. Second, Plaintiffs are in the business of growing grain and therefore had the ability to make deliveries on the contracts. (ECF No. 1, p. 9 at ¶44.) Third, as Plaintiffs point out,

6

Luckey is in the business of obtaining grain under contracts for resale and relied on actual delivery of the grain to carry on its business. (ECF No. 1, p.9 at ¶43.). Fourth, Luckey, as a grain elevator, engaged in the business of buying grain from farmers and had the capacity to take delivery of the corn and soybeans subject to the Contracts. (ECF No. 1, p.9 at ¶43.) Fifth, on their faces, the Contracts contemplated the actual physical delivery of corn and soybeans in exchange for money because the Contracts listed specific delivery dates notwithstanding that the price to be paid and quantity to be delivered consisted of an agreed-upon variable that was to be finalized at a future time (i.e. the Accumulator pricing mechanism in the Agrivisor Addendum). (ECF No. 1-2.) Sixth, although Luckey was an assignee of the Contracts, Plaintiffs had fulfilled other grain contracts with IDA and had a history of delivery of grain and receiving payment under similar contracts. Seventh, under the terms of the Contracts, Plaintiffs were to receive payment from Luckey only after they fulfilled all the contract terms, which included actual delivery in accordance with a specific delivery period.

Furthermore, Plaintiffs signed the Agrivisor Addendums to the Contracts which specifically stated the contracts and addendums served as evidence of the pricing mechanisms and did not constitute a futures or options contract. (ECF No. 1-2.)

### 2. Plaintiffs' assertion that the Contracts are futures contracts because they could theoretically be "rolled to infinity" is unpersuasive.

Plaintiffs argue that the Contracts do not contemplate actual delivery because they could theoretically be rolled "out to 'infinity.' " (ECF No. 1, p.21 at ¶80.). In *Andersons*, the Sixth Circuit ignored the same argument because it found that the contract at issue in that case could not be rolled forward without the consent of both parties. *Andersons*, 166 F.3d at *321. Specifically, the contracts in *Andersons* could only be rolled in one of two situations: (1) where the farmer fails to

establish the basis price within the applicable time period and the grain company chooses to roll the contract forward, or (2) where both of the parties agree in advance to roll the contract forward. *Id.*

Here, the facts are identical to *Andersons* because the face of the Contracts specify a delivery period and further state (1) if Plaintiffs fail to set basis, Luckey has the right but not the obligation to set basis (meaning Luckey can roll the contract forward if it chooses by not setting basis) and (2) the Contracts and Addendums may not be amended or otherwise modified (which includes the delivery period) without the written consent of both parties. (ECF No. 1-2.) Plaintiffs' argument is a red herring. The Sixth Circuit emphasizes, "the mere possibility of infinite rolling is not dispositive; whether actual delivery is contemplated remains the focal question." *Andersons*, 166 F.3d at n.20. Again, the face of the Contracts here provide a specific delivery period which shows actual delivery of the corn and soybeans was contemplated. (ECF No. 1-2.)

### 3. The Contracts are analogous to "Hedge-To-Arrive" contracts and "Premium Offer" contracts which have already been recognized by the Sixth Circuit and the CFTC as cash forward contracts.

Plaintiffs argue the Accumulator contract is a novel invention that runs afoul of the cash forward contract exception. The Sixth Circuit has held, " '[s]elf-serving labels' " that a party may choose to give its contracts . . . are not themselves dispositive of the futures/cash forward question: the ultimate focus is on whether the contracts in question contemplated actual, physical delivery of the commodity." *Andersons*, 166 F.3d at *319–320 (citing *CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, *773 (9th Cir.1995)) (citations omitted).

"Accumulator" contract is nothing more than a superficial label given to a contract that functions similarly to the Hedge-To-Arrive ("HTA") contract, which has already been recognized

by the Sixth Circuit as a cash forward contract—not a futures contract. *Andersons*, 166 F.3d at

*322. Like an HTA contract, an Accumulator contract is tied to futures contract prices and the

basis is established later. (ECF No. 1, p.11 at ¶49.) The key difference is that an Accumulator has

the potential to double the amount of grain a producer has promised to deliver. (ECF No. 1, p.11

at ¶52.) Nevertheless, under an Accumulator contract the producer commits to making physical

delivery of the commodity. Under an Accumulator contract, the producer will either sell the initial

quantity, double the initial quantity, or somewhere in between. (ECF No. 1, p.11 at ¶52.)

Importantly, Plaintiffs acknowledge the similarities between Accumulators and HTAs by stating

"[a]n Accumulator contract is similar to an ordinary HTA" and by recognizing there is price risk

with accumulators "[l]ike an HTA." (ECF No. 1, p.11 at ¶49; p.12 at ¶53.)

    The Accumulator contract is also very similar to Cargill's Premium Offer Contract

("POC") which the CFTC recognized as a forward contract in 2000:

> The producer enters into one of Cargill's typical forward contracts to deliver grain
> at a specified time under some pricing scheme. The Court will call this the
> "underlying contract." Next, the producer enters into an addendum agreement to
> the underlying contract, which the Court shall refer to as the "Premium Offer
> Contract" ("POC"). Under the POC, Cargill offers to accept delivery of additional
> bushels at a later specified period, and pay a premium on all bushels committed in
> the underlying contract for the nearby period, if the producer agrees to deliver those
> additional bushels for a "strike price" selected by the producer. Here is the catch.
> The producer only delivers those additional bushels and Cargill only accepts them,
> if the exchange-traded futures price for the grain is at or above the specified strike
> price on the pricing date set forth in the contract. If the futures price for the grain is
> below the strike price then neither party performs, the producer keeps both the
> additional bushels and the premium, and Cargill gets squat.

*In the Matter of Cargill, Inc., Respondent.*, 2000 WL 1728291, at *2.

    Here, the Accumulator, like the POC, (1) contemplates a producer entering into a typical

cash forward contract to deliver grain at a specified time under some pricing program, and (2)

features an addendum agreement to the underlying contract that (3) creates the potential for the delivery and acceptance of additional bushels if (4) the futures price for the grain is at or above a specific pricing level on the pricing date set forth in the contract. (ECF No. 1-2.) In *Cargill*, the CFTC focused on whether the POC created specific delivery obligations and ultimately found that the POC was within the forward contract exclusion. *In the Matter of Cargill*, 2000 WL 1728291, at *14. Here, the Sixth Circuit's seven factors analysis from *Andersons* indicates that the Contracts are also within the cash forward contract exception because actual, physical delivery of the commodity was contemplated. Plaintiffs cannot identify substantive differences between the Accumulator contract and Cargill's POC which would render the Accumulator a "futures contract" subject to the CEA.

### 4. The Contracts should be enforced as a matter of public policy because they promote market innovation and provide a tool for effective risk management.

Plaintiffs argue the Contracts are unregulated futures contracts subject to the CEA and CFTC simply because they are trying to evade their obligation to Luckey. Unfortunately, Plaintiffs are not the first producers to exhibit such "opportunistic behavior." *See Id.* at *11 ("producers who entered into HTA contracts have attempted to eliminate their obligations under these contracts by claiming they are unenforceable as unregulated futures contracts in violation of the Act."). Plaintiffs' argument is old, tired, and a misappropriation of judicial resources. As the CFTC recognized, "the social costs associated with the commercial disruption and the eruption of litigation spawned by the producers' efforts are unrecoverable." *Id*.

The Court should reject Plaintiffs' argument as a matter of public policy because "costs are incurred when innovation is stifled." *Id*. at *15. Just because the Accumulator contract is a

variation of a typical grain contract does not automatically make it a futures contract subject to the CEA. After all, "[s]uch new offerings frequently gestate at the borders of the regulated sector" and "[t]he Act does not prohibit such innovation." *Id*. Indeed, "the policies that shape and inspire the law in this area of commercial regulation encourage it." *Id*. Like the POC from Cargill, the Accumulator contract is an instrument "to deal with a single problem—managing risk." *Id*. If the Court fails to recognize the Accumulator contract as a forward contract, it will send a signal to the market that will force producers and grain companies to select a less preferred alternative. "This results in deadweight losses, imposing higher costs on all parties (and therefore on society as a whole)." *Id*.

Therefore, the Court should dismiss Counts I, II, and III of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted because the Contracts are cash forward contracts that are excluded from the CEA.

**B. Plaintiffs failed to state an actionable claim against Luckey in Count II because Plaintiffs failed to allege facts that show it is plausible that the Contracts are "fictitious sales" under the CEA.**

Plaintiffs argues Luckey violated 7 U.S.C.A. § 6c(a)(2)(A)(ii) because the Contracts are "fictitious sales." Despite their voluminous pleading, Plaintiffs fail to allege facts indicative of exactly *how* or *why* it is plausible that the Contracts are "fictitious sales" under the CEA. Plaintiffs failed to provide the definition for what constitutes a "fictitious sale" and failed to allege facts which indicate the Contracts meet the definition of "fictitious sale." Black's Law Dictionary defines fictitious as "[o]f, relating to, or involving a fiction, esp. a legal fiction." *Black's Law Dictionary* (10th ed. 2014). Here, the Contracts in this case are signed by all parties and contain

11

pricing mechanisms and a specific delivery period. (ECF No. 1-1 and ECF No. 1-2.) Therefore, nothing about the Contracts are "fictitious" as it is defined in Black's Law Dictionary.

At most, Plaintiffs assert the Contracts are "sham documents" that "contain quantity terms that are not possible in reality." (ECF No. 1, p.40 at ¶179.) The Contracts are not "sham documents" because they are in writing, signed by a representative of Plaintiffs, state a specific minimum bushel amount, and state a specific delivery period. (ECF No. 1-1.) In other words, the Contracts speak for themselves. Plaintiffs failed to allege facts that indicate how delivering corn and soybeans is "not possible in reality." Importantly, neither the Sixth Circuit nor the CFTC have held that HTA contracts or POC contracts—which are analogous to Accumulator contracts—are "fictitious sales" in violation of 7 U.S.C.A. § 6c(a)(2)(A)(ii). *See Andersons*, 166 F.3d; *In the Matter of Cargill*, 2000 WL 1728291.

Therefore, the Court should dismiss Count II of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted because Plaintiffs failed to allege facts that show it is plausible that the Contracts are "fictitious sales" under the CEA.

### C. Plaintiffs failed to state actionable claims against Luckey in Counts I, III, and VII because Plaintiffs did not satisfy the pleading standard in Fed. R. Civ. P. 9(b).

Plaintiffs cannot recover on their fraud claims because they failed to plead them with particularity. Claims based on fraud pose "a high risk of abusive litigation." *Twombly*, 550 U.S. at 569 n. 14. Accordingly, under Fed. R. Civ. P. 9(b), a party alleging fraud must state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). To survive Rule 9(b)'s heightened pleading standard, the Sixth Circuit requires the allegations "(1) to specify the allegedly fraudulent statements [or omissions]; (2) to identify the speaker; (3) to plead when and where the

statements were made; and (4) explain what made the statements fraudulent." *Bear Stearns & Co. Inc.*, 683 F.3d at 247.

The failure to identify specific fraudulent statements, speakers, or dates of fraudulent statements in the complaint is fatal to a fraud claim. *See Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984) (finding that dismissal was proper under Rule 9(b) because the plaintiff did not sufficiently allege the time, place, or contents of the misrepresentations upon which he relied); *Brightman v. Freeway Assoc.*, No. 90-4072, 1991 WL 151057 at *2 (6th Cir. Aug. 8, 1991) (clarifying that plaintiffs in Rule 9(b) cases must relate particular misrepresentations to particular dates). Rule 9(b)'s "special pleading standard is undoubtedly more demanding than the liberal notice pleading standard that governs most cases." *United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 352 F.3d 496, 503 – 506 (6th Cir. 2008) (affirming the dismissal of a plaintiff's complaint for failure to comply with the specific pleading requirements of Rule 9(b)).

Here, Plaintiffs did not state actionable claims against Luckey for fraud because Plaintiffs' pleading is devoid of the specific details that Rule 9(b) requires. Plaintiffs allege Defendants made "false, misleading, and coercive statements" to Plaintiffs and "willfully aided, abetted, counseled, induced and/or procured" certain violations of the CEA and "fraudulently created" new contracts. (ECF No. 1, p.39 at ¶170; p.40 at ¶183; p.46 at ¶232.) These ambiguous and undated allegations—which fail to (1) specify allegedly fraudulent statements, (2) identify the speaker(s) of such statements, (3) plead when or where the statements were made, and (4) explain what made the statements fraudulent—do not satisfy Rule 9(b)'s heightened pleading standard. *See Bender*, 749 F.2d at 1216 and *Brightman*, 1991 WL 151057 at *2. These defects are fatal to Plaintiffs' fraud claims.

Therefore, the Court should dismiss Counts I, III, and VII of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted because Plaintiffs failed to satisfy the heighted pleading standard in Rule 9(b).

### D. Plaintiffs failed to state an actionable claim against Luckey in Count IV, recission under the Uniform Commercial Code, because the breaching party to a contract cannot successfully argue for recission of a contract.

Plaintiffs cannot seek recission in this case because they breached the Contracts by failing to deliver the corn and soybeans they promised. In *Abioloa v. Select Portfolio Servicing, Inc.*, No. 2:17-CV-13741, 2021 WL 7208836, at *3 (E.D. Mich. Dec. 15, 2021), *report and recommendation adopted,* No. 217CV13741TGBKGA, 2022 WL 17752120 (E.D. Mich. Dec. 19, 2022), the court held, " 'in order to warrant recission of a contract, there must be a material breach affecting a substantial or essential part of the contract.' " *Id*. (quoting *Omnicron of Mich. v. Giannetti Inv. Co.*, 561 N.W.2d 138, **141 (Mich. App. 1997)). Furthermore, "only the *nonbreaching* party may successfully argue for the recission of the contract. *Abiola*, 2021 WL 7208836, at *3 (citing *Omnicron of Mich.*, 561 N.W. 2d at ** 141).

Here, Plaintiffs did not state an actionable claim against Luckey for recission of the Contracts under the UCC because Plaintiffs breached the Contracts through their failure to deliver the corn and soybeans as promised. As a result of Plaintiffs' failure to deliver on the Contracts, Luckey sustained substantial market related damages. Luckey's breach of contract claims are being litigated in the Toledo Cases. Like in *Abiola*, Plaintiffs cannot successfully argue for recission of the Contracts because they are not the nonbreaching party. *Abiola*, 2021 WL 7208836, at *3. Furthermore, Plaintiffs failed to allege how Luckey breached the terms of the Contracts.

14

Therefore, the Court should dismiss Count IV of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted because Plaintiffs, as the breaching parties, cannot successfully argue for recission of the Contracts.

### E. Plaintiffs failed to state an actionable claim against Luckey in Count V, unjust enrichment, because the parties were engaged in express, enforceable contracts which governed the parties' relationship.

Plaintiffs cannot recover for unjust enrichment in this case because the parties were engaged in express, enforceable contracts that governed their relationship. In *Radakovich v. Energy Recovery, Inc.*, No. 11-13443, 2012 WL 4513636, at *4 (E.D. Mich. Sept. 30, 2012), the court held, "[w]hen the complaint alleges an express, enforceable contract that controls the parties' relationship, a claim for unjust enrichment must be dismissed." *Id.* (citing *Bakerman v. Sidney Frank Importing Co., Inc.*, 2006 WL 3927242 at *18 (Del.Ch. Oct. 10, 2006).). In *Jaffe v. Travelers Companies, Inc.*, No. 1:22-CV-13157, 2023 WL 3262950, at *4 (E.D. Mich. Apr. 5, 2023), the court held "[a]n unjust enrichment claim cannot be maintained where there is an express contract that covers the same matter. *Id.* (citing *Heaton v. Bank of America Corp.*, 2011 WL 3112325, *5 (E.D. Mich. 2011) (Cohn, J.)) (citing *Kammer Asphalt Paving v. East China Township Schools*, 443 Mich. 176, 504 N.W.2d 635 (1993); *see also, Ceckiewicz v. Comcast Corp.*, No. 08-12038, 2008 WL 5382459, at *1 (E.D. Mich. Dec. 23, 2008) ("Defendant is correct that a plaintiff cannot recover for unjust enrichment where an express contract covers same subject matter."). "[A]n action for unjust enrichment seeks to imply a contract, which is not necessary or proper if an express contract covering the same matter exists." *Jaffe*, 2023 WL 3262950 at *4 (citing *Heaton*, 2011 WL 3112325 at *5).

Here, Plaintiffs did not state an actionable claim against Luckey for unjust enrichment because Plaintiffs and Luckey were parties to express contracts which govern the relationship between the parties. Plaintiffs cannot imply contracts under their unjust enrichment theory because they are already parties to express contracts with Luckey. Like in *Radakovich*, there are express, enforceable contracts that control the parties' relationship. *Radakovich*, 2012 WL 4513636, at *4. Plaintiffs admits to the existence of the express contracts by alleging Luckey's unjust enrichment "is traceable to, and resulted directly and proximately from, its solicitation and enforcement of the Contracts." (ECF No. 1, p.44 at ¶213.) To survive a motion to dismiss, Plaintiffs must base their unjust enrichment claim on something other than the Contracts.

Therefore, the Court should dismiss Count V of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted because Luckey and Plaintiffs were parties to an express, enforceable contract which governed the parties' relationship.

**F. Plaintiffs failed to state an actionable claim against Luckey in Count VI, negligence, because Luckey did not owe a duty to Plaintiffs separate and apart from its contractual obligation.**

Plaintiffs cannot recover for negligence because Luckey did not owe a duty to Plaintiffs that was separate and apart from its contractual obligation. In *Hughes v. State Farm Mutual Automobile Insurance Company*, No. 07-13542, 2008 WL 11355564 (E.D. Mich. Apr. 29, 2008), the court held "[a] proper allegation of a tort claim arising out of a contract requires a viable assertion that Defendant owed a duty to Plaintiff that did not arise out of the contract between the parties." *Id*. at *2. Furthermore, if such duty is established, then a plaintiff must "further demonstrate some active negligence" by a defendant "in order to properly plead a tort claim." *Id*. (citing *Spengler v. ADT Security Services, Inc.*, 505 F.3d 456, 457 (6th Cir. 2007)). Thus, the

threshold question is "whether the plaintiff alleges a violation of a legal duty separate and distinct from the contractual obligation." *Hughes*, 2008 WL 11355564 at *2.

Here, Plaintiffs did not state an actionable claim against Luckey for negligence because Plaintiffs failed to allege or establish that Luckey owed a duty—any duty, let alone a duty separate and distinct from its contractual obligations—to Plaintiffs. Indeed, the word "duty" does not appear anywhere in Plaintiffs' Complaint. Instead, Plaintiffs assert Luckey "was negligent in taking on the transfer of the contracts from IDA" because Luckey "should have known that Plaintiffs were oversold their annual production." (ECF No. 1, p.45 at ¶221.) This assertion does not articulate a duty that Luckey owed to Plaintiffs outside of the contractual relationship. Interpreting Plaintiffs' Complaint generously, the only conceivable "duty" Luckey owed Plaintiffs—the duty to be aware of the amount of corn and soybeans being contracted—emanated directly from the Contracts. In *Hughes*, the court dismissed the plaintiff's tort claim where the defendant's obligation emanated only from the contract. *Hughes*, 2008 WL 11355564 at *3.

Therefore, the Court should dismiss Count VI of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted because Plaintiffs failed to allege that Luckey owed Plaintiffs a duty that was separate and distinct from the parties' contractual relationship.

### G. Plaintiffs failed to state an actionable claim against Luckey in Count VIII, breach of contract, because the assignment from IDA to Luckey is not a breach of contract.

Plaintiffs cannot recover for breach of contract because there was no breach of contract when IDA assigned the Contracts to Luckey. In *ISRA Vision, AG v. Burton Industries, Inc.*, 654 F.Supp.2d 638 (E.D. Mich. 2009), the court recognized " '[t]he general presumption . . . is that a contractual right may be assigned, but conversely that assignment may also be precluded by

17

agreement.' " *Id.* at 647 (citing *Edwards v. Concord Dev. Corp.*, No. 174487, 1996 WL 33358104, *1 (Mich.Ct.App. Sept. 17, 1996)). Thus, unless the parties expressly agree to preclude assignment, contracts are assignable. In *Sparkle Builders I, Ltd. v. Williams*, No. 307522, 2012 WL 6097479, (Mich.Ct.App. Dec. 6, 2012), the court held "an assignment in itself lacks the mutuality of agreement necessary to establish a claim for a breach of contract." *Id.* at *2.

Here, Plaintiffs did not state an actionable claim against Luckey for breach of contract because there was no agreement between Plaintiffs and IDA that the Contracts were not assignable, and Plaintiffs never objected to the assignment. Specifically, Plaintiffs never objected to IDA's March 25, 2021 letter containing the contract notices which specifically contained the notation, "Transfer to Luckey." Furthermore, the face of the Contracts contain the language, "[t]his Contract . . . shall inure to the benefit of Buyer, *its successors and assigns*." (Emphasis added.) (ECF No. 1-1.) Lastly, like in *Sparkle Builders I, Ltd.*, the Contracts' assignment in itself lacks the mutuality of agreement necessary for Plaintiffs to establish a claim against Luckey for breach of contract. *Sparkle Builders I, Ltd.*, 2012 WL 6097479 at *2.

Therefore, the Court should dismiss Count VIII of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted because the Contracts' assignment from IDA to Luckey is not a breach of the Contracts under Michigan law.

## IV.   **CONCLUSION**

For the foregoing reasons, Luckey requests that the Court dismiss Plaintiffs' entire Complaint with prejudice. Luckey's counsel certifies that this is a standard case and that Luckey's Memorandum of Law adheres to the page limitation set forth in Local Rule 7.1(d).

Respectfully submitted,

*/s/ G. Eli Earich*
Troy A. Callicoat (Ohio 0076279)
E-Mail: tcallicoat@farmlawyers.com
G. Eli Earich (Ohio 0100970)
E-Mail: gearich@farmlawyers.com
**BARRETT, EASTERDAY,**
**CUNNINGHAM & ESELGROTH LLP**
7259 Sawmill Road, Dublin, Ohio 43016
Telephone: 614-210-1840 | Fax: 614-210-1841
*Attorneys for Defendant Luckey*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was served via the Court's CM/ECF system this 30th day of June, 2023, and by ordinary mail, postage pre-paid on all those receiving such notices in this case including, but not limited to:

| | | |
|---|---|---|
| John J. Schwarz II | Ida Farmers Co-Op | Pat Hanley |
| 310 N Chicago Street | 2953 Lewis Ave. | 2953 Lewis Ave. |
| PO Box 637 | Ida, MI 48140 | Ida, MI 48140 |
| Royal Center, IN 46978 | *Defendant* | *Registered Agent for Ida* |
| *Attorney for Plaintiffs* | | *Farmers Co-Op* |

*/s/ G. Eli Earich*
G. Eli Earich (Ohio #0100970)
*Attorney for Defendant Luckey Farmers, Inc.*

19